IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LESTER M. HAYES | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| TRANSCOR AMERICA, LLC, ET AL. | : | NO.  08-293 |

## MEMORANDUM

**Padova, J.**                                                                                                 **June 23, 2009**

Plaintiff Lester Hayes brings this action pursuant to 42 U.S.C. § 1983 and state common law against Defendants TransCor America, LLC ("TransCor"), Karen L. Oates, Carolyn Cooper, Kevin McCord, Gary Underwood, Ernest Franklin, Don W. Bowden, Robert Koch, and Mark Spickard (the "individual Defendants"), alleging violations of his Eighth and Fourteenth Amendment rights and intentional infliction of emotional distress ("IIED").  Plaintiff's claims arise out of a six-day prisoner extradition transport from North Carolina to Pennsylvania in May 2007.  Presently before the Court is Defendants' Renewed Motion to Dismiss or Transfer Venue, for which we held a hearing on June 11, 2009.  For the following reasons, we deny the Motion insofar as it seeks dismissal, but grant the Motion insofar as it seeks a transfer of venue.

## I.        BACKGROUND[1]

Plaintiff is a 67-year-old man who suffers from a herniated disc, arthritis, severe spinal stenosis, high blood pressure, and an enlarged prostate.  (Am. Compl. ¶¶ 23-24.)  Plaintiff's spinal condition

---

[1] "'In considering a motion to dismiss for improper venue under [Rule 12(b)(3)], the court must generally accept as true the allegations in the complaint, although the parties may submit affidavits in support of their positions.'" Chester v. Beard, Civ. A. No. 07-4742, 2008 WL 2310946, at *5 (E.D. Pa. June 2, 2008) (quoting Fellner v. Phila. Toboggan Coasters, Inc., 2005 WL 2660351, at *1 (E.D. Pa. Oct. 18, 2005)).  "'The court may examine facts outside the complaint to determine proper venue, but must draw all reasonable inferences and resolve all factual conflicts in the plaintiff[']s favor.'" Id. (quoting Fellner, 2005 WL 2660351, at *1).

makes it extremely painful for him to sit or stand for extended periods of time, and his prostate condition causes him to experience abnormally frequent urgency to urinate—as often as every 20 to 30 minutes.  (Id. ¶¶ 25-26.)  Plaintiff takes a variety of prescribed medications to treat his medical conditions.  (Id. ¶¶ 28-29.)

In May 2007, while incarcerated in a Greensboro, North Carolina jail, Plaintiff received notice of new criminal charges filed against him in Philadelphia.  (Id. ¶ 17.)  TransCor, the largest prisoner transportation company in the country, was hired to bring Plaintiff to Philadelphia.  (Id. ¶¶ 8, 19.)  Shortly before the transport set out on its six-day journey, prison medical staff provided Defendants with a supply of Plaintiff's medications and informed Defendants of Plaintiff's medical needs.  (Id. ¶ 31-32; see also Pl.'s Ex. B.)  However, Defendants neither catalogued nor stored Plaintiff's medications to ensure their timely administration and or to prevent their loss.  (Am. Compl. ¶ 33.)

The transport departed from Greensboro on May 12, 2007, and was broken down into two, three-day legs.  (Id. ¶ 31.)  The first leg involved travel through North Carolina, South Carolina, and Tennessee, before stopping overnight in Kentucky.  (Id. ¶ 22.)  During the second leg, the transport continued through Kentucky, Virginia, Maryland, Delaware, and New Jersey, before ultimately arriving in Pennsylvania on May 18, 2007.  (Id. ¶¶ 22, 56, 62.)  All told, the transport spent scarcely an hour in Pennsylvania, leaving Mount Holly, New Jersey, at approximately 12:01 a.m. and arriving in Philadelphia at approximately 1:35 a.m.  (Id. ¶¶ 61-62; see also Defs.' Exs. B, C.)

Over the course of the entire six-day transport, the individual Defendants refused to provide Plaintiff with his medications, in spite of Plaintiff's numerous complaints of back pain and other symptoms.  (Am. Compl. ¶¶ 35-36.)  Plaintiff also made repeated requests to use bathroom facilities, which went unfulfilled because of a TransCor policy that permitted bathroom breaks only every four to five hours.  (Id. ¶¶ 44-45.)  Consequently, Plaintiff urinated and defecated in his pants, and was

forced to sit in his soiled clothing for extended periods of time.  (<u>Id.</u> ¶¶ 46, 49, 57.)  In total, Plaintiff missed approximately 33 doses of medication, requested to use the bathroom between 20 to 25 times, urinated on himself between 24 to 28 times, and defecated on himself at least three times.  (Pl.'s Resp. to Defs.' Interrog. at 6-10.)  In this District, Plaintiff missed five to six doses of medication,  requested to use the bathroom five to six times, urinated on himself at least once, and defecated on himself at least once.[2]  (<u>Id.</u> at 6, 8, 11.)

Upon arriving in Philadelphia, Defendants handed Plaintiff over to the Philadelphia Police Department ("PPD").  (Am. Compl. ¶¶ 62-63.)  The "Prisoner Receipt" that was filled out by Defendants and delivered to PPD indicated that Plaintiff had no medications with him upon arrival. (<u>See</u> Pl.'s Ex. A.)  However, a PPD officer, Officer Smith, found a container full of Plaintiff's medications attached to Plaintiff's belongings.  (Am. Compl. ¶ 63.)  Plaintiff subsequently received medical care at the Curran-Fromhold Correctional Facility in Philadelphia.  (Pl.'s Resp. to Defs.' Interrog. at 12.)

## II.    DISCUSSION

Defendants ask us to dismiss this case because they contend that the Eastern District of Pennsylvania is an improper venue under 28 U.S.C. § 1391(b).  Alternatively, Defendants ask that we transfer this case to the Middle District of Tennessee pursuant to 28 U.S.C. § 1404(a).

When a defendant moves pursuant to Federal Rule of Civil Procedure 12(b)(3) to dismiss a case based on improper venue, and we determine that venue is improper, we must either dismiss the case

---

[2]In his interrogatory responses, Plaintiff alleges that these events occurred in Pennsylvania generally, without specifically alleging that they occurred in this District.  Nevertheless, we take judicial notice that Mount Holly, New Jersey, is approximately 30 miles away from Philadelphia. Moreover, the record establishes that the transport took approximately 1.5 hours to travel between Mount Holly and Philadelphia.  As we must draw all reasonable inferences in Plaintiff's favor, we find the acts that Plaintiff alleges occurred in Pennsylvania occurred in this District.

or transfer it "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). If, on the other hand, we determine that venue is proper in this District, we may transfer the case "to any other district or division where it might have been brought" "[f]or the convenience of parties and witnesses, [or] in the interest of justice . . . ." Id. § 1404(a). Defendants bear the burden of showing both that venue in this District is improper and that transfer to another district is justified. See Chester, 2008 WL 2310946, at *5 (citing Fellner, 2005 WL 2660351, at *1); Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). Although we find that this District is a proper venue, we conclude that transferring the case to the Middle District of Tennessee is appropriate under the circumstances.

A.     Proper Venue

Because this case implicates our federal question jurisdiction pursuant to 28 U.S.C. § 1331, proper venue is governed by 28 U.S.C. § 1391(b). In his Amended Complaint, Plaintiff asserts that this District is a proper venue under § 1391(b)(2) because a substantial part of the events giving rise to his claims occurred in this District. We agree.

When a defendant challenges venue under § 1391(b)(2), we undertake a two-part inquiry. First, we "'identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims.'" Chester, 2008 WL 2310946, at *7 (quoting Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005)); see also Cottman Transmissions Sys. v. Martino, 36 F.3d 291, 295 (3d Cir. 1994) (first identifying the acts or omissions that gave rise to the plaintiff's claims before determining whether a substantial part of those acts or omissions occurred in the district where the suit was filed).

Second, we "'determine whether a substantial part of those events or omissions material to [those] claims . . . have occurred in the district in question.'" Chester, 2008 WL 2310946, at *7 (quoting Daniel, 428 F.3d at 432). "Substantiality is intended to preserve the element of fairness so that a

4

defendant is not haled into a remote district having no real relationship to the dispute." Cottman, 36 F.3d at 294. Consequently, "'[w]hen material acts or omissions within the forum bear a close nexus to the claims, they are properly deemed 'significant' and, thus, substantial . . . .'" Leone, 574 F. Supp. 2d at 484 (quoting Daniel, 428 F.3d at 432; see also Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005). Conversely, "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough." Cottman, 36 F.3d at 294; see also Leone, 574 F. Supp. 2d at 484. Because § 1391 "'does not require a majority of the events take place here, nor that the challenged forum be the best forum for the lawsuit to be venued,'" Fellner, 2005 WL 2660351, at *3 (quoting Park Inn Int'l, L.L.C. v. Mody Enters., Inc., 105 F. Supp. 2d 370, 376 (D.N.J. 2000)), "'[i]t is irrelevant that a more substantial part of the events took place in another district, as long as a substantial part of the events took place in [this] district as well.'" Rodriguez v. Smith, Civ. A. No. 03-3675, 2005 WL 1484591, at *3 n.5 (E.D. Pa. June 21, 2005) (quoting Morris v. Genmar Indus., Inc., Civ. A. No. 91-5212, 1993 WL 217246, at *5 (N.D. Ill. July 18, 1993)). At bottom, the substantiality inquiry is more qualitative than quantitative. Daniel, 428 F.3d at 432.

Turning to the first part of the inquiry, dealing with the nature of Plaintiff's claims, we observe that Plaintiff alleges that: (1) the individual Defendants violated his Eighth and Fourteenth Amendment rights through their intentional, wanton, and deliberate indifference to his medical needs during the transport; (2) TransCor violated his Eighth and Fourteenth Amendment rights through the execution of its unconstitutional policy by the individual Defendants during the transport; and (3) all Defendants intentionally inflicted emotional distress upon him through the conduct of the individual Defendants during the transport. In essence, the acts or omissions giving rise to all of Plaintiff's claims consist of the individual Defendants' refusal to administer his medications, as well as their forcing him to both soil himself and sit in soiled clothing for extended periods of time, pursuant to TransCor's allegedly

5

unconstitutional policy.

Turning to the second part of the inquiry, involving substantiality, we observe that several instances of the conduct giving rise to Plaintiff's claims allegedly occurred in this District.[3]  Although the number of acts or omissions alleged to have occurred in this District is relatively small, it is not insignificant.  See, e.g., Katz v. Mogus, 538 F. Supp. 2d 538, 542-43 (E.D.N.Y. 2007) (finding venue proper where the conduct occurring within the district gave rise to only 20 percent of the plaintiff's damages); McCaskey v. Continental Airlines, Inc., 133 F. Supp. 2d 514, 525 (S.D. Tex. 2001) (finding venue proper in the Southern District of Texas where the airline was allegedly negligent for failing to cut short a cross-country flight originating in Houston after the decedent suffered a heart attack shortly after take off).  More importantly, the alleged within-District acts or omissions are qualitatively central to Plaintiff's claims and comprise "'part of the historical predicate for the instant suit.'"  Estate of Moore v. Dixon, 460 F. Supp. 2d 931, 936 (E.D. Wis. 2006) (quoting Master Tech Prods., Inc. v. Smith, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002)).  While Plaintiff might not be able to prevail on his claims solely on the basis of the acts alleged to have occurred in this District, he likewise might not be able to prevail on his claims without them.  Consequently, we find that Defendants' within-District acts or omissions are sufficiently substantial for purposes of § 1391(b)(2) because they "bear a close nexus" to Plaintiff's claims.  Leone, 574 F. Supp. 2d at 484 (quoting Daniel, 428 F.3d at 432).  Defendants have not satisfied their burden of establishing otherwise.  Venue is therefore proper in this District, and

---

[3]At the hearing, Defendants contended that no acts or omissions relevant to Plaintiff's Monell-type claim occurred in this District because the policy at issue was established and enforced solely in Tennessee.  However, to hold a corporation that acts under color of state law liable for its unconstitutional policy, a plaintiff must establish that the *execution* of that policy inflicted the injury alleged.  See Monell v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Natale v. Camden County Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003) (applying Monell to a private corporation).  Plaintiff has satisfactorily alleged that the individual Defendants executed TransCor's policy in this District.

Defendants' Motion is denied insofar as it seeks dismissal based on improper venue.

      B.    <u>Transferring Venue</u>

In the alternative, Defendants have moved pursuant to 28 U.S.C. § 1404(a) to transfer this case to the Middle District of Tennessee, where TransCor is headquartered and where five of the eight individual Defendants reside.[4]  Plaintiff has not asserted that the Middle District of Tennessee is an improper venue under 28 U.S.C. § 1391(b), but contends that we should keep the case here because Defendants have failed to establish that transfer is proper.  We disagree.

In deciding whether to transfer a case, we do not confine our review to the three factors enumerated in 28 U.S.C. § 1404(a) (convenience of parties, convenience of witnesses, and interests of justice), but consider the more general public and private interests protected by § 1404(a).  <u>Jumara</u>, 55 F.3d at 879.  Because the burden rests with Defendants to establish that transfer is proper, they must show that "'the balance of convenience of the parties is strongly in [their] favor . . . .'" <u>Shutte v. Armco Steel Corp.</u>, 431 F.2d 22, 25 (3d Cir. 1970) (quoting <u>Owatonna Mfg. Co. v. Melroe Co.</u>, 301 F. Supp. 1296, 1307 (D. Minn. 1969)).  We address the private and public factors separately below.

      1.    Private factors

The private factors we must consider include:

> [1] plaintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

---

[4]Counsel for Defendants represented at the hearing on this Motion that the three remaining individual Defendants reside in Arkansas, Texas, and Kentucky.

7

Stone St. Servs., Inc. v. Breaux, Civ. A. No. 00-1904, 2000 WL 876886, at *3 (E.D. Pa. June 19, 2000)

(quoting Jumara, 55 F.3d at 879).  We find that the balance of these factors favors transfer to Tennessee.

Traditionally, the court does not lightly disturb the plaintiff's choice of venue because the

plaintiff's choice "is a paramount consideration in any determination of a transfer request."  Shutte v.

Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).  In this case, however, Plaintiff does not reside in

this District, and has not resided here at any time relevant to this litigation.[5]  A plaintiff's choice of

forum is entitled to less deference when he does not reside in the chosen forum, and is to be considered

as but one among several factors.  Perretta v. Consol. Rail. Corp., Civ. A. No. 98-491, 1998 WL

316088, at *2 (E.D. Pa. June 10, 1998); see also New Image, Inc. v. Travelers Indem. Co., 536 F. Supp.

58, 59 (E.D. Pa. 1981); cf. Piper Aircraft v. Reyno, 454 U.S. 235, 255 (1981) (noting that "a plaintiff's

choice of forum is entitled to greater deference when the plaintiff has chosen the home forum" (citing

Koster v. Am. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947))).  Defendants' countervailing

preference is to litigate this case in the Middle District of Tennessee.  Accordingly, we find that the first

two factors, the parties' respective preferences, only modestly favor keeping the case in this District.

However, the third and fourth factors substantially favor transfer.  With respect to the third

factor, we observe that the vast majority of the acts or omissions giving rise to Plaintiff's

claims—including, most importantly, the creation and enforcement of TransCor's allegedly

unconstitutional policy—occurred outside this District; very few occurred in this District.  With respect

to the fourth factor, we find that the collective burdens that would be imposed on the eight individual

Defendants if the case were to remain here, where none of them resides, heavily outweighs the burden

_____

[5]When Plaintiff initiated this lawsuit, he was incarcerated in a federal correctional facility in
Elkton, Ohio.  (Am. Compl. ¶ 7.)  At the hearing, Plaintiff's Counsel represented that Plaintiff
resided in Waymart, Pennsylvania, prior to his incarceration and currently resides in a halfway house
outside of Scranton, Pennsylvania, both of which are in the Middle District of Pennsylvania.

that would be imposed on the single Plaintiff if the case were transferred to Tennessee.  We also note

that Defendants have a constitutional right to be present at trial, which Plaintiff does not enjoy.

     Finally, the last two factors are neutral, as both Plaintiff and Defendants have failed to establish,

let alone allege, that any of the witnesses they plan to call or the documentary evidence they plan to use

at trial would be unavailable at trial in either this District or the Middle District of Tennessee.  In sum,

the private factors weigh in favor of transferring this case to the Middle District of Tennessee.

     2.     Public factors

The public factors we must consider include:

> [1] the enforceability of the judgment; [2] practical considerations that
> could make the trial easy, expeditious, or inexpensive; [3] the relative
> administrative difficulty in the two fora resulting from Court
> congestion; [4] the local interest in deciding local controversies at
> home; and [5] the familiarity of the trial judge with the applicable state
> law in diversity cases.

Stone St., 2000 WL 876886, at *3 (quoting Jumara, 55 F.3d 879-80).  As with the private factors, we

find that the balance of the public factors favors transfer.

     The second and fourth factors substantially favor Defendants.  Most of the decision makers and

records involved in Plaintiff's Monell-type claim against TransCor are located in the Middle  District

of Tennessee, as are a majority of the Defendants.  The Middle District of Tennessee is therefore in the

best position to oversee discovery relating to the bulk of the witnesses, parties, and important

documents in this case.[6]  Moreover, given that this District is not Plaintiff's home forum, the Middle

District of Tennessee has a greater local interest in this controversy, insofar as it involves the alleged

---

     [6]Plaintiff's counsel represented at the hearing that two of Plaintiff's witnesses, PPD Officer
Smith and Plaintiff's treating physician, Dr. Kaplan, currently reside in this District.  Any burden
imposed upon the Middle District of Tennessee in overseeing discovery with respect to these two
witnesses, however, is more than outweighed by the burdens imposed on this Court in overseeing
discovery with respect to at least six party witnesses in Tennessee.

unlawful conduct of several of its residents, including a corporation that has its principal place of business within that District's boundaries.

The remaining factors are in equipoise. A judgment issued either by this Court or by a federal court in the Middle District of Tennessee would be equally enforceable. Moreover, to the extent that a choice-of-law question arises regarding which state's law governs Plaintiff's common law IIED claim, we note that IIED is not a "particularly complex or unsettled" area of law and that "[j]udges in this district frequently apply foreign law in diversity cases when there is no challenge to venue." Hatfield, Inc. v. Robocom Sys. Int'l, Inc., Civ. A. No. 98-4004, 1999 WL 46563, at *2 (E.D. Pa. Jan. 15, 1999).[7] Finally, although a factor not worthy of great weight, the relative congestion of the respective courts slightly favors transfer to the extent that Defendants' evidence shows that the average Middle District of Tennessee judge has fewer new cases per year than does the average judge in this District,. See Leading Edge Logistics, Inc. v. Central Trucking, Inc., Civ. A. No. 05-1299, 2005 WL 1417131, at *2 (E.D. Pa. June 16, 2005) (citations omitted).

In sum, the balance of the public factors weighs strongly in favor of transferring this case to the Middle District of Tennessee.

## IV.   CONCLUSION

For the foregoing reasons, we find that this District is a proper venue, but that transferring this case to the Middle District of Tennessee is appropriate under 28 U.S.C. § 1404(a). Consequently, Defendants' Motion is denied insofar as it seeks dismissal for improper venue, but granted insofar as

---

[7]We also note that Pennsylvania's and Tennessee's respective prima facie IIED cases are virtually identical. Compare Hoy v. Angelone, 720 A.2d 745, 753 (Pa. 1998) (requiring (1) "extreme and outrageous conduct" that (2) "intentionally or recklessly causes" (3) "severe emotional distress to another") with Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997) (requiring that the conduct complained of must "(1) . . . be intentional or reckless; (2) . . . be so outrageous that it is not tolerated by civilized society; and (3) . . . result in serious mental injury").

it seeks transfer of venue.  An appropriate Order follows.

BY THE COURT:

    /s John R. Padova
John R. Padova, J.

11